

NUMBER 13-13-00600-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TEXAS MUSIC LIBRARY
AND RESEARCH CENTER,                                            Appellant,

v.

TEXAS DEPARTMENT OF
TRANSPORTATION AND
PHIL WILSON, EXECUTIVE
DIRECTOR,                                                       Appellees.

On appeal from the 250th District Court
of Travis County, Texas.

# MEMORANDUM OPINION

Before Justices Garza, Perkes and Longoria
Memorandum Opinion by Justice Longoria

Texas Music Library and Research Center (the "Library") appeals the district court's final order granting a plea to the jurisdiction filed by the Texas Department of Transportation ("TxDOT") and its executive director and dismissing the Library's suit against them for lack of jurisdiction.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.012 (West, Westlaw through 2013 3d C.S.) ("Appeal or Writ of Error to Court of Appeals").[1] By one issue, which we will address as five issues, the Library contends that the district court erred in dismissing its suit.  For the reasons set forth below, we affirm the district court's order.

## I. BACKGROUND[2]

The Federal-Aid Highway Act establishes a system of grants-in-aid to the states to finance part of the cost of constructing highways in the federal-aid highway system.  *See* 23 U.S.C. Ch. 1 (West, Westlaw through 113–130 P.L.) ("Federal-Aid Highways").  The Act "require[s] that 10% of certain funds apportioned to a state pursuant to . . . [the Act] be used for transportation enhancement activities, as defined."  43 TEX. ADMIN. CODE § 11.200 ("Purpose") (citing 23 U.S.C. §§ 104(b)(3), 133(d)(2), 160(e)(2)).  The Texas Transportation Commission is required to "allocate one-half of those funds to metropolitan planning organizations operating in transportation management areas."  *Id.*  The Texas Transportation Commission may allocate funds to TxDOT for activities that qualify for the State's Transportation Enhancement Program (STEP) and are located on the state highway system, and it may also make funds available in a statewide competitive program

---

[1] This case was transferred to this Court from the Third Court of Appeals by a docket equalization order issued by the Texas Supreme Court.  *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

[2] The following facts are not in dispute.  *See* TEX. R. APP. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them.").

that enhances the surface transportation systems and facilities within the state for the benefit of the users of those systems.  *Id.*

TxDOT administers STEP, which provides access to federal funds made available by the Federal Highway Administration (FHWA) pursuant to the Federal Highway Act for qualifying non-traditional transport-related projects in the state.  *Id.* §§ 11.200–.221 ("Transportation Enhancement Program").  According to TxDOT, the program is designed to assist projects that go above and beyond standard transportation activities and will be integrated into the surrounding environment in a sensitive and creative manner that contributes to the livelihood of the communities, promotes the quality of our environment, and enhances the aesthetics of our roadways.

The 79th Texas Legislature included in the General Appropriations Act of 2005 a contingency provision intended to provide potential access during the 2006–07 biennium to $10 million in federal transportation enhancement program funds for an "official" museum of music history for the State of Texas.  *See* Act of June 18, 2005, 79th Leg., R.S., ch. 1369, art. 9, § 14.31 (full text available http://www.lrl.state.tx.us/scanned/79ccrs/sb0001.pdf) (accessed July 14, 2014).  The relevant provision of the appropriations act (hereinafter "Section 14.31") provides as follows:

> Sec. 14.31. **Texas Museum of Music History.**  Notwithstanding any other provisions in this Act it is the intent of the Legislature that $10 million in federal Transportation Enhancement Program funds administered by . . . [TxDOT] be made available during the biennium for whichever entity is designated as the official Texas museum of music history by the Trusteed Programs within the Office of the Governor. [TxDOT] . . . shall make available during the biennium $10 million in federal Transportation Enhancement Program funds administered by . . . [TxDOT] for the designated entity provided that such entity's project meets federal funding requirements of the Transportation Enhancement Program as defined by

3

federal regulations of the U.S. Department of Transportation, Federal Highway Administration under Title 23 of the United States Code. [TxDOT] . . . will review the Texas museum of music history project to determine if it meets the federal Transportation Enhancement Program guidelines in Title 23 of the United States Code. It is the intent of the Legislature that funds appropriated above would cover allowed costs of administering the Texas museum of music history project.

In addition, [TxDOT] . . . may redirect obligated funds previously obligated for the Texas museum of music history under the Transportation Enhancement Program to other available projects should the project fail to receive federal approval or federal Transportation Enhancement Program funds are not available due to changes in federal laws, rules, regulations, or appropriations.

*Id.*

According to the Library, prior to the passage of the General Appropriations Act of 2005, two groups had been competing for legislative approval for their respective proposals for an official museum of music history for the State of Texas. One group was based in Austin, the other in Houston. Ultimately, the final version of the appropriations act enacted by the Texas Legislature did not specify which group's project would be designated as the official museum of music history for the State of Texas. *See id.* Instead, the Legislature directed TxDOT to make funds available to "whichever entity is designated as the official Texas museum of music history by the Trusteed Programs within the Office of the Governor." *Id.* The record is silent regarding whether the Trusteed Programs within the Office of the Governor ever designated an entity as the "official" Texas museum of music history. Although the Library acknowledges in its pleadings that "the bill directing TxDOT to submit a request for $10 million in federal . . . funds did not specify where the Texas Museum of Music History would be or who would be the party submitting the proposal," the Library also alleges that "[u]ltimately, the bill left it to the

4

FHWA to decide which project, if any, would receive $10 million in federal transportation enhancement program funds."

On May 26, 2006, TxDOT submitted the Austin group's proposed project to the FHWA for approval. The FHWA denied approval of the Austin group's proposed project because it did not "comply with the 'evolved' FHWA criteria for eligibility." According to the Library's pleadings in this suit, in 2009, "TxDOT invited, directed, and assisted the . . . [Library], which had been part of the Houston group, in preparing an alternate proposal for the . . . project, one which would meet the 'evolved' federal criteria." Allegedly acting in reliance on TxDOT's assurances, the Library proceeded with its part of preparing an entirely new and different proposal for the project, one that followed the transportation enhancement guidelines, procedures, and rules and TxDOT guidelines and directives as to the costs that would be reimbursed. In the process, the Library allegedly expended or committed a combined total in excess of $300,000.00 for the project, all of which, it believed, were reimbursable costs under the transportation enhancement program. The Library alleges that it "submitted its proposal to TxDOT for submission to the FHWA with express reference to exception 552.131 of the Texas Public Information Act . . . [to] protect[] from required public disclosure certain economic development information." Tex. Gov't Code Ann. § 552.131 (West, Westlaw through 2013 3d C.S.) ("Exception: Confidentiality of Certain Economic Development Information"). The Library also alleges that it "advised TxDOT that the proposal constituted a trade secret."

On January 13, 2010, TxDOT submitted the Library's proposal to the FHWA for approval. According to the Library, during this "time frame, TxDOT continued to take the position that the only condition on proceeding with the . . . Library['s] proposal was

5

obtaining federal approval. Inexplicably, however, at some point after that time, TxDOT changed its position 180 degrees." In its pleadings in this suit, the Library alleges that "the Austin group learned of the proposal and began a concerted effort to interfere with the pending approval process and to persuade both TxDOT and the FHWA not to approve the . . . Library['s] proposal." Nevertheless, "[a]tfer some additional modifications and some curious delays, . . . on June 21, 2012, the FHWA finally issued its approval, deeming the project eligible for federal transportation enhancement funds."

On July 11, 2013, the Library filed its "original petition and memorandum brief in support" in the district court, alleging that TxDOT and its executive director had "failed and refused to follow through with a project agreement to administer and pass through . . . [$10 million in federal transportation enhancement program] funds obligated for the [Library's] project" to establish an official music history museum for the State of Texas. According to the Library's petition, it filed this suit "to compel . . . TxDOT and its Executive Director . . . to fulfill . . . [a] ministerial duty to act as steward of the federal funds approved by the . . . [FHWA] for . . . [the Library's] project."

In its petition, the Library alleges that TxDOT has refused to make federal funds available for the Library's project based on its assertion that "the two-year limit on appropriations of *state* funds in Article VIII, Section 6, of the Texas Constitution applies and that TxDOT's current procedural rules for the . . . STEP . . . apply." *See* TEX. CONST. art. VIII, § 6 ("Withdrawal of Money from Treasury; Duration of Appropriation"); 43 TEX. ADMIN. CODE §§ 11.200–.221. According to the Library, "TxDOT is now threatening to divert federal funds already obligated by . . . [Section 14.31] and approved by the FHWA for the specific proposal of the . . . [Library] for other projects, presumably projects

6

selected by TxDOT under the STEP rules as opposed to projects designated by the Texas Legislature." The Library asserts that this case raises "legal issues" including whether TxDOT's current procedural rules for STEP apply to the Library's project and whether "the two-year limit on appropriations in Article VIII, Section 6, of the Texas Constitution applies [to the federal funds authorized for the Library's project]." *See* TEX. CONST. art. VIII, § 6; 43 TEX. ADMIN. CODE §§ 11.200–.221.

In its petition, the Library asserts a number of claims requesting five general forms of relief against TxDOT and its executive director. First, the Library requests declaratory relief under the Administrative Procedures Act (APA). *See* TEX. GOV'T CODE ANN. § 2001.038 (West, Westlaw through 2013 3d C.S.) (APA). Specifically, the Library seeks a declaration under the APA that TxDOT's STEP rules do not apply to the federal funds authorized for the Library's project because "the Texas Legislature prescribed directly the procedure for selecting this project by directing TxDOT to seek federal approval for a Texas Museum of Music History." *See* 43 TEX. ADMIN. CODE §§ 11.200–.221.

Second, the Library seeks the following declarations under the Uniform Declaratory Judgments Act (UDJA), *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011 (West, Westlaw through 2013 3d C.S.): (1) the two-year limit on appropriations in Article VIII, Section 6 of the Texas Constitution does not apply to the federal funds that the FHWA approved for the Library's project, *see* TEX. CONST. art. VIII, § 6; (2) TxDOT's executive director violated the Library's rights to due course of law guaranteed by Article I, Section 19 of the Texas Constitution by inducing the Library "to spend and/or obligate itself to pay hundreds of thousands of dollars and to obtain in-kind donations of real property only to 'change his mind' and ignore his agency's long-standing interpretation of

7

its rules . . . after [the] FHWA approval had been obtained," *see id.* art. I, § 19 ("Deprivation of Life, Liberty, Etc.; Due Course of Law"); (3) TxDOT's executive director violated Article I, Section 16 of the Texas Constitution, which prohibits the impairment of contracts, because the "Library is a third party beneficiary to the contract between TxDOT and the FHWA" and "[t]he acts and omission of TxDOT impair that contract and the . . . Library's rights under that contract," *see id.* art. I, § 16 ("Bills of Attainder; Ex Post Facto or Retroactive Laws; Impairing of Contracts"); and (4) TxDOT and its executive director violated the Library's rights under Article I, Section 17 of the Texas Constitution, which prohibits the government from taking property without just compensation, because the "Library has rights in the location and its intellectual property that have been adversely affected here in a manner that constitutes inverse condemnation." *See id.* art. I, § 17 ("Taking, Damaging, or Destroying Property for Public Use; Special Privileges and Immunities; Control of Privileges and Franchises").

Third, the Library seeks a writ of mandamus ordering TxDOT's executive director to proceed with the Library's project. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991) ("A writ of mandamus will issue to compel a public official to perform a ministerial act."). In connection with this claim, the Library alleges that "[t]he TxDOT role in the process at this stage is purely ministerial—to act as steward over federal funds for the project." According to the Library, it "has no adequate remedy at law" because "there is no contract between TxDOT and the . . . Library."

Fourth, in the alternative, the Library asserts a cause of action for just compensation for the taking of its property by TxDOT. *See* TEX. CONST. art. I, § 17. In support of this claim, the Library alleges that it "proceeded with its part of preparing a

8

project that followed federal transportation enhancement guidelines, procedures, and rules (eligibility category requirements) and TxDOT guidelines and directives as to the costs that could be reimbursed" and "[i]n the process . . . expended and/or committed a combined total in excess of $300,000.00 for the project, all of which were transportation enhancement reimbursable costs." The Library alleges that "TxDOT has taken the . . . Library's money." The Library further alleges that its "proposal constituted a trade secret," which was "adversely affected here in a manner that constitutes inverse condemnation."

Fifth, the Library seeks temporary and permanent injunctive relief to prevent TxDOT from diverting the federal funds authorized for the Library's project to other projects under other programs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 65.011 (West, Westlaw through 2013 3d C.S.) ("Grounds Generally" for writ of injunction). In connection with this claim, the Library alleges that it "will suffer irreparable injury if injunctive relief is not granted against TxDOT and/or its Executive Director" because "TxDOT has expressed its intention to award the entire allotment of highway enhancement funds to other projects . . . selected through the STEP process, before the end of the fiscal year (August 31, 2013)." The Library acknowledges that "a contractual remedy arguably would exist" if this were "a STEP project"; however, the Library maintains that this is not a STEP project and that it is therefore "without remedy at law." Based on the foregoing, the Library requests that the district court "enter a temporary restraining order, temporary injunction, and/or permanent injunction preventing TxDOT from diverting the $10,000,000.00 in federal funds at issue to other projects under other programs, in particular from diverting $10,000,000.00 of the $78,000,000.00 in federal funds allocated for highway enhancement projects for fiscal year 2012."

9

TxDOT and its executive director filed an answer, a plea to the jurisdiction, and subsequently, an amended plea to the jurisdiction. In their plea to the jurisdiction, TxDOT and its executive director asserted that, absent a clear statutory waiver of immunity or specific legislative consent, immunity from suit deprived the district court of subject matter jurisdiction. They argued in relevant part as follows:

> Plaintiff's suit is an attempt to invalidate a substantial and important discretionary decision by the executive branch of State government, and is nothing less than an attempt to obtain mandatory injunctive relief against the State to force it to take actions for which it has no legal authority or complete discretion to decide. The Plaintiff does not really seek a declaration of its rights, constitutional or otherwise, but interference with, and control of, the discretionary judgments and actions of the executive branch of State government. Neither the Declaratory Judgments Act nor the Administrative Procedures Act confer subject matter jurisdiction upon this court under these circumstances. Plaintiff's suit constitutes an impermissible collateral attack upon the discretionary action of the executive branch of State government.

In their first amended plea to the jurisdiction, TxDOT and its executive director expanded and elaborated on their challenge to the district court's jurisdiction. They discussed each of the Library's claims individually and provided the district court with arguments for why it lacked jurisdiction over each claim. In addition to asserting their immunity from suit, TxDOT and its executive director also asserted that there "is no justiciable controversy that will be resolved by the rules challenge" under the APA.

The Library objected that it had not been afforded an opportunity to replead with respect to any alleged pleading defects or the opportunity to present evidence in opposition to the plea to the jurisdiction. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("As is the case with special exceptions, a pleader must be given an opportunity to amend in response to a plea to the jurisdiction only if it is possible to cure the pleading defect.").

10

The district court overruled the Library's objections, granted the amended plea, and dismissed the suit for lack of jurisdiction. The district court's written order states that its ruling was based solely on the parties' pleadings and arguments of counsel and that the district court did not consider any evidence in making its ruling. The Library now appeals the district court's ruling by one issue, which we will address as five issues.

## II. IMMUNITY FROM SUIT

"Sovereign immunity protects the State, its agencies, and its officials from lawsuits for damages." *Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self–Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006). "Under the common-law doctrine of sovereign immunity, the sovereign cannot be sued without its consent." *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). "Although this rule was originally justified by the fiction that the king can do no wrong, in modern times its purpose is pragmatic: to shield the public from the costs and consequences of improvident actions of their governments." *Id.* (quotations omitted).

"In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *see also Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 390 (Tex. 2011) ("The central test for determining jurisdiction is whether the 'real substance' of the plaintiff's claims falls within the scope of a waiver of immunity from suit."). "[O]nly the Legislature can waive sovereign immunity

11

from suit." *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 857 (Tex. 2002). However, "when the State or a state agency has taken a person's property for public use, the State's consent to suit is not required; the Constitution grants the person consent to a suit for compensation." *Sawyer Trust*, 354 S.W.3d at 388.

Similarly, certain claims "against state officials do not implicate the sovereign immunity doctrine." *IT-Davy*, 74 S.W.3d at 855. "Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority." *Id.* Under the *ultra vires* exception, "claims may be brought against a state official for nondiscretionary acts unauthorized by law." *Tex. Dept. of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011) (per curiam). "Such lawsuits are not against the state and thus are not barred by sovereign immunity." *Id.* Accordingly, "the proper defendant in an *ultra vires* action is the state official whose acts or omissions allegedly trampled on the plaintiff's rights, not the state agency itself." *Id.* "[A]s a technical matter, the governmental entities themselves—as opposed to their officers in their official capacity—remain immune from suit" on such claims. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009). This rule "derives from the premise that the acts of officials which are not lawfully authorized are not acts of the State." *Id.* at 373.

### III. STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that challenges the district court's subject matter jurisdiction and is the proper procedural vehicle for a defendant to assert its immunity from suit. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review the record de novo to determine whether the district court has subject matter jurisdiction. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). "We

12

focus first on the plaintiff's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists." *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). "We construe the pleadings liberally, looking to the pleader's intent." *Id.* at 643. "If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead." *Id.*; *see also Koseoglu*, 233 S.W.3d at 840 ("[A] pleader must be given an opportunity to amend in response to a plea to the jurisdiction only if it is possible to cure the pleading defect.").

In some cases, "a plea to the jurisdiction may require the court to consider evidence pertaining to jurisdictional facts." *Holland*, 221 S.W.3d at 643. "A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted." *Id.*; *see also Miranda*, 133 S.W.3d at 233–34 (holding that "the trial court lacked subject matter jurisdiction over the action" because "the Department established it was not grossly negligent and . . . the Mirandas failed to raise a fact issue on that point"). "This standard mirrors our review of summary judgments, and we therefore take as true all evidence favorable to  . . . . [the claimant], indulging every reasonable inference and resolving any doubts in her favor." *Heinrich*, 284 S.W.3d at 378; *Tex. Dept. of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 694 (Tex. App.—Austin 2011, no pet.) ("Our ultimate inquiry is whether the plaintiff's pled and un-negated facts, taken as true, and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims within the trial court's subject-matter jurisdiction.").

**IV. APA CLAIM**

13

By its first issue, the Library contends that the district court erred by dismissing its claim for a declaration under the APA that TxDOT's STEP rules do not apply to the Library's project.

## A. Applicable Law

"[S]ection 2001.038 [of the APA] is a grant of original jurisdiction and, moreover, waives sovereign immunity." *Tex. Logos, L.P. v. Tex. Dept. of Transp.*, 241 S.W.3d 105, 123 (Tex. App.—Austin 2007, no pet.). The APA gives the district court jurisdiction to resolve two issues: "(1) whether a rule is *valid*, and/or (2) whether a rule is *applicable*." *Friends of Canyon Lake, Inc. v. Guadalupe–Blanco River Auth.*, 96 S.W.3d 519, 529 (Tex. App.—Austin 2002, pet. denied). "[The APA] authorizes declaratory relief when determining the validity or applicability of a rule, if the plaintiff alleges 'that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.'" *El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*, 247 S.W.3d 709, 713 (Tex. 2008) (quoting TEX. GOV'T CODE ANN. § 2001.038(a)).

## B. Jurisdictional Challenge

In their amended plea to the jurisdiction, TxDOT and its executive director argued that the district court had no jurisdiction over the Library's APA claim for two reasons. "First," they argued, "there is no justiciable controversy that will be resolved by the rules challenge." According to TxDOT and its executive director, "A court's mere holding that the rules are inapplicable would not act to force Defendants to provide transportation enhancement funds to Plaintiff for its museum of music history." "Second," they argued,

"to the extent that . . . Plaintiff is seeking to enforce an alleged contract and recover money damages[,] the court has no jurisdiction."

## C. Arguments on Appeal

On appeal, the parties continue to dispute whether the Library's APA rules challenge presents a justiciable controversy. *See Tex. Logos, L.P.*, 241 S.W.3d at 123 ("[S]ection 2001.038, like other causes of action, requires the existence of a justiciable controversy to establish the district court's subject-matter jurisdiction."). The parties disagree about whether the relief requested, if granted, would "resolve the ultimate dispute." *Id.* at 119. According to the Library, "if the STEP rules do not apply, TxDOT has a ministerial duty to honor the FHWA approval . . . [by proceeding with the project]." TxDOT and its executive director disagree. They argue that the declaratory relief available under the APA would not require TxDOT to fund the Library's project.

In addition, TxDOT and its executive director argue that the APA "is not a legitimate vehicle for . . . [the] Library's claim regarding TxDOT's rules because . . . [the] Library lacks a prerequisite 'legal right or privilege' that would be 'impair[ed]' or 'interfered with' by the rules." TEX. GOV'T CODE ANN. § 2001.038(a) ("The validity or applicability of a rule, including an emergency rule adopted under Section 2001.034, may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.").

## D. Discussion

According to the Library, application of TxDOT's STEP rules to its project interferes with or impairs the Library's right to receive certain "obligated funds" from TxDOT. The

15

Library alleges that it has a right to receive the "obligated funds" by virtue of TxDOT's conduct and representations, the Texas Legislature's enactment of Section 14.31, and the FHWA's approval of the Library's proposed project. In this sense, the "real substance" of the Library's claim for relief under the APA is not a challenge to the application or validity of TxDOT's STEP rules; rather, the Library challenges TxDOT's refusal to fund its project. *See Sawyer Trust*, 354 S.W.3d at 389 ("The central test for determining jurisdiction is whether the 'real substance' of the plaintiff's claims falls within the scope of a waiver of immunity from suit.").

Whether the Library has the right to receive the "obligated funds" and whether TxDOT has a duty to provide the funds to the Library are the issues at the heart of the parties' dispute. A declaration to the effect that TxDOT's STEP rules do not apply to the Library's project would not, on its own, establish the Library's right to receive the "obligated funds" or establish that TxDOT has a duty to provide the funds to the Library.

The Third Court of Appeals has observed that the remedy afforded by the APA is "limited to declarations concerning the *rule*—that the rule is null and void, in the case of a validity challenge, or that the rule did not impose a right, duty, or obligation on the plaintiff, in the case of an applicability challenge." *State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 362 (Tex. App.—Austin 2009, pet. denied). Furthermore, "it does not speak to whether or how the court is to resolve whether that 'right or privilege' actually exists if that issue is disputed, much less purport to waive sovereign immunity if such immunity would otherwise bar the court from making that determination." *Id.* at 363.

We conclude that because it is "limited to declarations concerning the *rule*"—in this case, TxDOT's STEP rules—the relief authorized by the APA and requested by the

16

Library would not resolve the parties' ultimate dispute. *Id.* at 362. The Library's asserted right to receive $10 million in federal funds from TxDOT does not allegedly arise from TxDOT's STEP rules. Rather, the Library alleges that it has a right to receive federal funds and that TxDOT has a duty to provide it with federal funds based on TxDOT's conduct and representations to the Library, the legislative directive in Section 14.31, and the FHWA's approval of the Library's project. Furthermore, TxDOT's STEP rules are not allegedly imposing a duty or obligation on the Library. Rather, the rules govern TxDOT's conduct. According to the Library's petition, TxDOT's STEP rules give TxDOT, "not the Texas Legislature, the power to designate the projects for which the state would pursue federal funding." If so, then a declaration that TxDOT's STEP rules do not apply to the Library's project would establish that TxDOT has no "power to designate" the Library's project for federal funding, but it would not establish that TxDOT has a duty to fund the Library's project. The alleged inapplicability of TxDOT's STEP rules, if established by a judicial declaration, would not preclude the State of Texas from exercising its sovereign discretion, recognized under federal law, to designate which FHWA-approved projects will ultimately receive federal transportation enhancement program funds through TxDOT. *See* 23 U.S.C. § 145(a) ("Protection of State Sovereignty").

On its own, the declaratory relief requested under the APA would not establish the Library's right to receive the "obligated funds" or that TxDOT has a duty to fund the Library's project. To establish jurisdiction and to obtain the funding it seeks, the Library must establish more than the inapplicability of TxDOT's STEP rules—it must allege and ultimately prove that some statutory or constitutional provision gives it an actual legal entitlement to receive the federal funds from TxDOT. *See Heinrich*, 284 S.W.3d at 371

17

("[W]here statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments."). The Library cannot use its APA rules challenge to establish its entitlement to payment under some other statutory or constitutional provision or legal theory. *See BP Am. Prod. Co.*, 290 S.W.3d at 362 (noting that the remedy afforded by the APA "is limited to declarations concerning the rule . . . and does not in itself provide relief with respect to the underlying statutes or other law"). Thus, the relief requested by the Library under the APA would not resolve the parties' ultimate dispute. Accordingly, we conclude that the district court properly dismissed the Library's APA claim for lack of jurisdiction. *See Tex. Logos, L.P.*, 241 S.W.3d at 119 (holding that dismissal is appropriate if "a declaration . . . would not resolve the ultimate dispute"); *see also Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1996) ("A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought.").

Furthermore, the Library cannot cure this pleading defect by amending its petition to request a declaration that it has a right to receive the "obligated funds" and that TxDOT has a duty to fund the Library's project because such relief is not authorized by the APA and is therefore outside the APA's limited waiver of immunity from suit. *See* TEX. GOV'T CODE ANN. § 2001.038(a); *Sunset Transp., Inc.*, 357 S.W.3d at 700 (noting that the APA "waives sovereign immunity to the extent of creating a cause of action for declaratory relief regarding the 'validity' or 'applicability' of a 'rule'"); *BP Am. Prod. Co.*, 290 S.W.3d at 362 (noting that the APA does not "provide relief with respect to the underlying statutes or other law"); *see also Friends of Canyon Lake, Inc.*, 96 S.W.3d at 529 (noting that the

18

APA "does not confer jurisdiction upon a court to determine whether an administrative agency has complied with the administrative code"). Therefore, the Library is not entitled to an opportunity to amend its pleadings with respect to this claim. *See Koseoglu*, 233 S.W.3d at 840. We overrule the Library's first issue.

## V. UDJA CLAIMS

By its second issue, the Library argues that the district court erred by dismissing its UDJA claims against TxDOT and its executive director.

### A. Immunity Under the UDJA

While the UDJA "waives sovereign immunity for certain claims, it is not a general waiver of sovereign immunity." *Sawyer Trust*, 354 S.W.3d at 388. For instance, the UDJA "expressly allows persons to challenge ordinances or statutes." *IT-Davy*, 74 S.W.3d at 859–60. "Moreover, the [U]DJA requires challengers to join governmental entities in suits to construe legislative pronouncements." *Id.* at 860. Generally, however, the UDJA "does not alter a trial court's jurisdiction." *Sawyer Trust*, 354 S.W.3d at 388. Rather, it is "merely a procedural device for deciding cases already within a court's jurisdiction." *Id.* (quoting *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)). "And a litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit." *Id.* "Consequently, sovereign immunity will bar an otherwise proper [U]DJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived sovereign immunity." *Id.* Thus, as a practical matter, "the state is generally immune from declaratory actions brought under the UDJA." *Sefzik*, 355 S.W.3d at 622. Accordingly, the Texas Supreme Court has stated

19

that "state agencies, like TxDOT here, are immune from suits under the UDJA unless the Legislature has waived immunity for the particular claims at issue." *Id.* at 620.

However, "certain declaratory-judgment actions against state officials do not implicate the sovereign-immunity doctrine." *IT-Davy*, 74 S.W.3d at 855. For instance, as noted above, "[p]rivate parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority." *Id.*; *see Tex. Lottery Comm'n v. First State Bank DeQueen*, 325 S.W.3d 628, 633 (Tex. 2010) ("An *ultra vires* suit is one to require a state official to comply with statutory or constitutional provisions."); *Heinrich*, 284 S.W.3d at 372 (stating that "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity"). Immunity from suit does not extend "to officials using state resources in violation of state law." *Heinrich*, 284 S.W.3d at 372. "[A]n action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars." *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997).

**B. Applicability of Two-Year Limit on Appropriations**

As noted above, the district court dismissed the Library's UDJA claim for a declaration that the two-year limit on appropriations in Article VIII, Section 6 of the Texas Constitution does not apply to the federal funds that the FHWA approved for the Library's project. *See* TEX. CONST. art. VIII, § 6. We agree with this disposition because the Library has not established that the Legislature has waived TxDOT's immunity from suit for purposes of this claim. *See Sefzik*, 355 S.W.3d at 620.

20

This claim is "one involving a government officer's action or inaction." *First State Bank DeQueen*, 325 S.W.3d at 633. Specifically, the Library complains about the failure of TxDOT's executive director "to act as steward over federal funds for the [Library's] project." According to the Library, the duty "is purely ministerial." However, a declaration establishing the inapplicability of Article VIII, Section 6 of the Texas Constitution would not establish that the Library has a statutory or constitutional entitlement to payment that may be enforced in a suit against TxDOT's executive director under the exception to sovereign immunity recognized by the Texas Supreme Court in *Heinrich*. *See Heinrich*, 284 S.W.3d at 371 ("[W]here statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments.").

To state a claim within the district court's jurisdiction under *Heinrich*, the Library was required to allege that TxDOT's executive director "acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372. The Library has attempted to meet its burden by alleging that TxDOT's executive director had no authority to withhold payment of federal funds to the Library based on the two-year limit on appropriations in Article VIII, Section 6 of the Texas Constitution, which according to the Library, is inapplicable to the Library's project. *See* Tex. Const. art. VIII, § 6. Even assuming this assertion were true—that the two-year limit on appropriations gives TxDOT's director no authority to withhold funds—it would not establish that TxDOT's executive director has an obligation to make federal funds available to the Library. The relief requested by the Library would not resolve the actual controversy between the parties because it would not establish whether the Library has a statutory or constitutional entitlement to payment of

21

federal funds administered by TxDOT and its executive director. Therefore, the district court lacked jurisdiction over this claim. *See Beadle*, 907 S.W.2d at 467.

We further conclude that the Library cannot cure the jurisdictional defect in this UDJA claim by amending its pleadings. *See Koseoglu*, 233 S.W.3d at 840. On appeal, the Library argues that TxDOT and its executive director "have a ministerial duty not to divert federal funds approved by the FHWA" for the Library's project. And by its suit, the Library is attempting to "direct the disposition of federal transportation funds." However, the Library has affirmatively alleged that no formal project agreement has been executed by TxDOT and the FHWA for the Library's project, which means that under federal law, TxDOT has no contractual right to receive federal funds from the FHWA for the Library's project. *See* 23 U.S.C. § 106(a)(3) ("The execution of the project agreement shall be deemed a contractual obligation of the Federal Government for the payment of the Federal share of the cost of the project.").

Nothing in the record suggests that the FHWA has provided TxDOT with $10 million in federal funds or any other sum of money specifically earmarked for the Library's project. Thus, the alleged duty not to divert federal funds away from the Library's project is not actual, but rather, hypothetical and contingent, and the requested declaration about the alleged duty would be tantamount to an advisory opinion, which Texas courts lack jurisdiction to issue. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444 ("[W]e have construed our separation of powers article to prohibit courts from issuing advisory opinions because such is the function of the executive rather than the judicial department."). Accordingly, the district court did not err in dismissing the claim without affording the Library an opportunity to amend its pleadings. *See Koseoglu*, 233 S.W.3d at 840.

22

**C. Due Course of Law Violation**

The district court also dismissed the Library's UDJA claim for a declaration that TxDOT's executive director violated the Library's rights to due course of law guaranteed by Article I, Section 19 of the Texas Constitution by inducing the Library "to spend and/or obligate itself to pay hundreds of thousands of dollars and to obtain in-kind donations of real property only to 'change his mind' and ignore his agency's long-standing interpretation of its rules . . . after [the] FHWA approval had been obtained." *See* TEX. CONST. art. I, § 19.

To state a viable due course of law or due process claim, the Library was required to allege the existence of a protected interest. *See Nat'l Collegiate Athletic Ass'n v. Yeo*, 171 S.W.3d 863, 867–68 (Tex. 2005) ("We first consider whether . . . [the plaintiff] has an interest protected by due course of law under article I, section 19 of the Texas Constitution."). In its petition, the Library alleged that it has a protected interest in the FHWA's approval of its project and thus a protected interest in receiving $10 million in federal funds from TxDOT. However, federal law renders the Library's position untenable:

> **(a) Protection of State Sovereignty.** The authorization of the appropriation of Federal funds or their availability for expenditure under this chapter shall in no way infringe on the sovereign rights of the States to determine which projects shall be federally financed. The provisions of this chapter provide for a federally assisted State program.

23 U.S.C. § 145(a). Furthermore, as noted above, under federal law, the federal government has no contractual obligation to fund the Library's project until the FHWA and TxDOT have executed a formal project agreement, and the Library has alleged that they have not executed such an agreement. *See id.* § 106(a)(3).

Given that federal law recognizes that the State of Texas retains sovereign discretion to determine which projects approved by the FHWA will actually receive federal funds, and given further that the Library's pleadings affirmatively negate the existence of a formal project agreement between TxDOT and the FHWA for the Library's project, we cannot conclude that the FHWA's approval gave the Library a protected interest in receiving federal funds. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). As a matter of law, the FHWA's approval did not give the Library a protected interest in receiving $10 million in federal funds from TxDOT. *See* 23 U.S.C. § 145(a); *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 561 (Tex. 1985) ("A property or liberty interest must find its origin in some aspect of state law."). Accordingly, the district court did not err by dismissing the Library's UDJA claim concerning an alleged violation of its rights to due course of law or due process of law. *See Heinrich*, 284 S.W.3d at 372 ("[S]uits that lack merit may be speedily disposed of by a plea to the jurisdiction.").

We note that on appeal, the Library disagrees that it "has no due process interest" and "also contends that its claim of a property interest is not limited to the FHWA approval." The Library argues that once TxDOT submitted the Library's proposal to the FHWA for approval, "it could not simply 'change its mind.'" According to the Library, this conferred a protectable interest. TxDOT responds that the Library has "no right to receive federal funding" and that "[t]here is no due-process right to recoup sunk costs that were

24

voluntarily incurred in pursuit of governmental funding." We agree with TxDOT on both points.

As set forth above, the Library does not have a protected interest in receiving federal funds from TxDOT. *See Yeo*, 171 S.W.3d at 870 (holding that if a plaintiff "has asserted no interests protected by article I, section 19 of the Texas Constitution[,] . . . [t]he case must . . . be dismissed"). Furthermore, to the extent that the Library allegedly expended resources or otherwise incurred losses in pursuit of such funding and thereby suffered an injury to a protected property interest when TxDOT reversed its position, we note that "the remedy for a denial of due process is due process." *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 933 (Tex. 1995). We also note that the Library has not requested relief in the form of due process. Instead, it has requested a declaration that TxDOT violated its rights to due process. The ostensible purpose of this declaration is to require TxDOT's executive director to proceed with the Library's project by entering a formal project agreement with the FHWA; however, it is well settled under *Heinrich* that "declaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State" that "cannot be maintained without legislative permission." *Hienrich*, 284 S.W.3d at 372 (quoting *IT-Davy*, 74 S.W.3d at 855–56). Accordingly, because the Library has not alleged a valid waiver of immunity for a claim for such relief, the district court did not err in dismissing this UDJA claim without affording the Library an opportunity to amend its pleadings. *See Koseoglu*, 233 S.W.3d at 840.

**D. Impairment of Contract**

The district court also dismissed the Library's UDJA claim regarding TxDOT's executive director's alleged violation of Article I, Section 16 of the Texas Constitution, which prohibits the impairment of contracts. *See* TEX. CONST. art. I, § 16. In support of this claim, the Library alleges that it is "a third party beneficiary to the contract between TxDOT and the FHWA" and that "[t]he acts and omission of TxDOT impair that contract and the . . . Library's rights under that contract." TxDOT responds that neither it nor its executive director is a legislative body subject to Article I, Section 16 of the Texas Constitution, which provides that "[n]o bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." *Id.* We agree with TxDOT.

By its plain terms, Article I, Section 16 of the Texas Constitution applies to law-making bodies. *See id.* The Library has not alleged that TxDOT has made "any law impairing the obligation of contracts." *Id.* Rather, the Library has alleged that TxDOT and its executive director have failed and refused to follow through with a formal project agreement with the FHWA for the Library's project.[3] Furthermore, we agree with TxDOT that the "sovereign-immunity bar for money-judgment claims squarely forecloses" any claim by the Library as an alleged beneficiary of a contract. *See IT-Davy*, 74 S.W.3d at 860 (stating that immunity from suit "does not allow private parties to sue the State for

---

[3] Again, we note that under federal law, the federal government has no contractual obligation to fund the Library's project until the FHWA and TxDOT have executed a formal project agreement. *See* 23 U.S.C. § 106(a)(3). The Library has not alleged that a formal project agreement was executed between the FHWA and TxDOT. On the contrary, the Library's petition alleges that TxDOT has "failed and refused to follow through with a project agreement . . . ." Accepting this allegation as true, we conclude that the federal government has no contractual obligation to fund the Library's project. *See id.* Accordingly, although the Library alleges that it has a right to receive $10 million in federal transportation enhancement program funds, its allegation that no formal project agreement exists affirmatively negates the existence of any contractual obligation that the federal government has to fund the Library's project through payment to TxDOT. *See id.*

26

money damages under the [U]DJA"). The Library has not alleged a valid waiver of immunity with respect to this claim, and therefore, the district court properly dismissed it. *See id.* at 856 ("[P]rivate parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim."). Moreover, on appeal, the Library has failed to address this claim, failed to request an opportunity to replead it, and failed to demonstrate how it could amend its pleadings to cure the jurisdictional defect. *See* TEX. R. APP. P. 38.1(i). Therefore, we conclude that the Library has not demonstrated that the district court committed reversible error by dismissing this claim without giving the Library an opportunity to amend its pleadings.

**E. Taking without Just Compensation/Inverse Condemnation**

The district court also dismissed the Library's UDJA claim against TxDOT and its executive director for alleged violation of the Library's rights under Article I, Section 17 of Texas Constitution, which prohibits the government from taking property without just compensation, "unless by the consent of such person." TEX. CONST. art. I, § 17(a). In support of this claim, the Library has alleged that it "has rights in the location and its intellectual property that have been adversely affected here in a manner that constitutes inverse condemnation." *See Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 135 S.W.3d 620, 646 (Tex. 2004) ("Texas provides an inverse condemnation action for violation of article I, section 17 of the Texas Constitution.").

"[S]overeign immunity does not shield the State from a claim based upon a taking under Article I, Section 17 of the Texas Constitution, known as the 'takings clause.'" *Holland*, 221 S.W.3d at 642. "To establish a takings claim, . . . [a party] must prove (1)

the State intentionally performed certain acts, (2) that resulted in a 'taking' of property, (3) for public use." *Gen. Servs. Comm'n v. Little-Tex. Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001). "[D]etermining whether a taking has occurred is a question of law for the court." *City of Austin v. Travis Cnty. Landfill Co.*, 73 S.W.3d 234, 241 (Tex. 2002). To establish an inverse condemnation claim, "a property owner [must] allege[] that the government has usurped the use and value of his or her property, even if it has not completely appropriated title." *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.2d 829, 844 (Tex. 2010). "A person who consents to the governmental action, however, cannot validly assert a takings claim . . . or state a claim for inverse condemnation . . . ." *Id.* (citing *City of Round Rock v. Smith*, 687 S.W.2d 300, 303 (Tex. 1985)).

TxDOT and its executive director maintain that the Library "cannot establish that . . . [TxDOT or its executive director] took or damaged . . . [the Library's] property" because they "merely received a voluntary proposal for submission to the FHWA." TxDOT and its executive director maintain that the Library has not and cannot state a viable claim for taking or inverse condemnation because it "voluntarily submitted its proposal that it spent money preparing and considered to be a trade secret." In this sense, they argue, the Library "consented to any alleged taking." We agree with TxDOT and its executive director.

Although the Library alleges that it has no contract with TxDOT, it is undisputed that the Library voluntarily (1) prepared its project proposal, (2) submitted its proposal to TxDOT for approval by the FHWA, and (3) committed real property and funds for the project. There is nothing in the record to indicate that the Library could possibly amend

28

its pleadings to allege that its conduct in the foregoing respects was nonconsensual or involuntary. *See Sawyer Trust*, 354 S.W.3d at 391 ("The premise for a constitutional takings cause of action is that one person should not have to absorb the cost of his property being put to a public use unless he consents."). Accordingly, we conclude that the Library cannot assert a viable claim against TxDOT or its executive director for an unconstitutional taking or inverse condemnation. *See Holland*, 221 S.W.3d at 643. Therefore, TxDOT and its executive director retain their immunity from suit, and the district court properly dismissed this claim without affording the Library an opportunity to amend its pleadings. *See id.*[4] We overrule the Library's second issue.

## VI. CLAIM FOR WRIT OF MANDAMUS

By its third issue, the Library contends that the district court erred by dismissing its claim against TxDOT's executive director for a writ of mandamus.

### A. Applicable Law

The Texas Constitution empowers the district courts of this state "to issue writs of mandamus to compel public officials to perform ministerial acts." *Brennan v. City of Willow Park*, 376 S.W.3d 910, 926–27 (Tex. App.—Fort Worth 2012, pet. denied) (citing TEX. CONST. art. V, § 8); *see also Anderson*, 806 S.W.2d at 793.[5] "Ministerial acts are

---

[4] We note that the claim was also properly dismissed on the alternative ground that the Library requested declaratory relief instead of compensation. *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995) (stating that Article I, Section 17 of the Texas Constitution waives immunity only when a claimant is seeking compensation).

[5] "Generally, the district court has exclusive original jurisdiction over mandamus proceedings except when the Constitution or a statute confers original jurisdiction on another tribunal." *In re Nolo Press/Folk Law, Inc.*, 991 S.W.2d 768, 775 (Tex. 1999) (orig. proceeding) (citing TEX. CONST. art. V, § 8; TEX. GOV'T CODE ANN. § 24.007); *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 671–72 (Tex. 1995) (orig. proceeding) ("District courts are always the courts of exclusive original jurisdiction for mandamus proceedings unless the constitution or a law confers such jurisdiction on another tribunal.") (citing TEX. GOV'T CODE ANN. § 24.011).

those for which 'the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'" *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 425 (Tex. 2004) (quoting *Comm'r of the Gen. Land Office v. Smith*, 5 Tex. 471, 479 (1849)). "If the public official must obey an order, without having any choice in complying, the act is ministerial." *Id.* "If an action involves personal deliberation, decision, and judgment, however, it is discretionary." *Id.* "[A] writ of mandamus will not issue to compel a public official to perform an act which involves an exercise of discretion." *Anderson*, 806 S.W.2d at 793. "However, this rule is not without exception—a writ of mandamus may issue in a proper case to correct a clear abuse of discretion by a public official." *Id.* "This is especially so where there is no adequate remedy at law." *Dykes v. City of Houston*, 406 S.W.2d 176, 183 (Tex. 1966).

**B. Discussion**

The Library asserts that pursuant to Section 14.31, TxDOT's executive director has a ministerial duty to fund the Library's project. However, by its own terms, Section 14.31 does not require TxDOT or its executive director to make federal funds available to the Library. Section 14.31 states that TxDOT shall make $10 million in federal funds available during the biennium beginning on September 1, 2005 to the "entity designated as the *official* Texas museum of music history by the Trusteed Programs within the Office of the Governor," if that entity meets federal guidelines. (emphasis added). The Library has not alleged that it was designated as the official Texas museum of music history by the Trusteed Programs within the Office of the Governor. Therefore, the Library has not pled a viable claim for writ of mandamus based on TxDOT's executive director having a ministerial duty to fund the Library's project under Section 14.31. Furthermore, the Library

has not pled a viable claim that TxDOT's executive director effectively suspended state law by failing to make federal funds available to the Library.  *See* TEX. CONST. art. I, § 28 ("No power of suspending laws in this State shall be exercised except by the Legislature.").

Based on the allegations in the Library's petition, the failure of TxDOT's executive director to make federal funds available to the Library was not a clear abuse of discretion for which mandamus will issue.  *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) ("[A public official] abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.") (quotations omitted). Accordingly, because the Library has not stated a viable claim for writ of mandamus against TxDOT's executive director, he retains immunity from suit.  *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011) ("[T]he Secretary retains immunity from suit unless the voters have pleaded a viable claim.").

Next, we must determine whether the Library is entitled to an opportunity to amend its pleadings to cure the jurisdictional defect.  *See Koseoglu*, 233 S.W.3d at 840. Shunning "talismanic allegations alone," we must look to "the substance of the claims"— were we to take a different approach, the "constraining power of pleas to the jurisdiction would practically be eliminated." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637–38 (Tex. 2012); *State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009) ("Immunity from suit is a jurisdictional question of whether the State has expressly consented to suit.").  Although nuanced and complex in some respects, the legal battlefield where we make our inquiry is no "sophistic Miltonian Serbonian Bog." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476–77 (Tex. 2012) (citing JOHN MILTON, PARADISE LOST

31

42, bk. II, ll. 592–94 (Gordon Teskey ed., Norton & Co. 2005) (1674) (describing the land beyond Lethe as "[a] gulf profound as that Serbonian bog/Betwixt Damiata and Mount Casius old/Where armies whole have sunk")). After all, legislative consent for suit must be "by clear and unambiguous language." *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994). Alternatively, under the *ultra vires* exception, "claims may be brought against a state official for nondiscretionary acts unauthorized by law." *Sefzik*, 355 S.W.3d at 621. The suit must be "against a state official for acting outside his authority." *See Sawyer Trust*, 354 S.W.3d at 393.

The "real substance" of the Library's suit is to require TxDOT and its executive director to provide the Library with $10 million in federal funds administered by TxDOT. *See id.* at 389. The Texas Supreme Court has observed that "where statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments." *Heinrich*, 284 S.W.3d at 371. However, in this case, there is no statutory or constitutional provision that would entitle the Library to payment of federal funds.

Section 14.31 does not confer such a right, at least not directly, because it provided that the Trusteed Programs within the Office of the Governor were to designate the entity that would be the State of Texas's "official" museum of music history. The Library has not alleged that it ever received that designation. Furthermore, even assuming the Library could amend its pleadings to allege that it did receive the "official" designation—an assumption for which there is no support in the record—Section 14.31 would not entitle the Library to payment of federal funds because it is undisputed that the Library did not

receive federal approval for its project until 2012, several years after the two-year period specified in Section 14.31 had expired in 2007. Therefore, under the plain terms of Section 14.31, TxDOT, acting through its executive director, had discretion to "redirect obligated funds previously obligated for the Texas museum of music history under the Transportation Enhancement Program to other available projects . . . ."

In our view, the "real substance" of the Library's suit is an attempt to control state action by seeking to establish the existence and validity of a contract between TxDOT and the FHWA for the Library's project, enforce performance thereunder, and thereby impose liability on the state. *See Sawyer Trust*, 354 S.W.3d at 389. This claim has no merit because the Library has alleged that TxDOT has failed and refused to execute a formal project agreement with the FHWA for the Library's project, which negates the possibility that the federal government has an enforceable contractual obligation to fund the project—even though it is undisputed that the FHWA approved the project's eligibility to receive federal transportation enhancement program funds. *See* 23 U.S.C. § 106(a)(3). More to the point, the Texas Supreme Court has made it clear that "suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities" are barred by sovereign immunity. *IT-Davy*, 74 S.W.3d at 855.

Moreover, to establish a valid *ultra vires* claim against TxDOT's executive director, the Library was required to allege and prove the existence of some law or order that the executive director "must obey" by providing the Library with federal funding. *Ballantyne*, 144 S.W.3d at 425. As set forth above, Section 14.31 did not impose a ministerial duty on TxDOT's executive director to fund the Library's project because it gave TxDOT

33

discretion to "redirect" the funds to other available projects after the museum of music history project failed to receive federal approval during the 2006–07 biennium. Although the FHWA subsequently approved the Library's project in 2012, neither Section 14.31 nor federal law required TxDOT's executive director to follow through with a formal project agreement with the FHWA. *See* 23 U.S.C. § 145(a). Thus, the Library cannot state a viable *ultra vires* claim against TxDOT's executive director because he had discretion and authority to "redirect" the federal funds previously obligated for an official museum of music history to other available projects and no ministerial duty to make funds available to the Library, particularly, after the close of the 2006–07 biennium.

Although TxDOT's alleged representations to the Library indicated that the FHWA's approval was the only barrier to federal funding for the Library's project, TxDOT's conduct "cannot waive immunity from suit." *IT-Davy*, 74 S.W.3d at 856. "It also follows that administrative agents—even those who have authority to contract on the agency's behalf—cannot waive their agencies' immunity from suit." *Id.* Following this rationale, we conclude that TxDOT's alleged representations to the Library do not constitute a law or order that the executive director "must obey" by providing the Library with federal funding. *Ballantyne*, 144 S.W.3d at 425.

In sum, the Library's pleadings contain sufficient factual allegations to affirmatively demonstrate incurable defects in jurisdiction precluding the Library from asserting a viable claim for a writ of mandamus or other *ultra vires* claim against TxDOT's executive director. Therefore, the district court did not err in dismissing this claim without affording the Library an opportunity to amend its pleadings. *See Miranda*, 133 S.W.3d at 227 ("If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be

granted without allowing the plaintiffs an opportunity to amend."). We overrule the Library's third issue.

## VII. TAKINGS CLAIM

By its fourth issue, the Library contends that the district court erred by dismissing its claim against TxDOT for an unconstitutional taking of its property and inverse condemnation. TEX. CONST. art. I, § 17(a). As previously noted, immunity from suit "does not shield the State from an action for compensation under the takings clause." *Little– Tex.*, 39 S.W.3d at 598. Thus, "a claimant who successfully proves a takings claim would be entitled to compensation, and the claim would not be barred by immunity even though the judgment would require the government to pay money for property previously taken." *Heinrich*, 284 S.W.3d at 376. However, in connection with the Library's second issue, we concluded that the district court did not err in dismissing the Library's takings claim and claim for inverse condemnation for lack of jurisdiction. The Library's fourth issue presents nothing further for this Court to decide. *See* TEX. R. APP. P. 47.1. Accordingly, for the reasons set forth above, we overrule the Library's fourth issue.

## VIII. CLAIM FOR INJUNCTIVE RELIEF

By its fifth issue, the Library contends that the district court erred by dismissing its claim against TxDOT and its executive director for injunctive relief. The Texas Supreme Court has observed that "suits for injunctive relief may be maintained against governmental entities to remedy violations of the Texas Constitution." *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (per curiam) (quotations omitted). Likewise, "a claimant who successfully proves an *ultra vires* claim [against a state official] is entitled to prospective injunctive relief, as measured from the date of injunction." *Heinrich*, 284

S.W.3d at 376. This "ensures that statutes specifically directing payment, like any other statute, can be judicially enforced going forward." *Id.*

As set forth above, the district court did not err in dismissing the Library's other claims against TxDOT and its executive director for lack of jurisdiction. *See Thomas v. Long*, 207 S.W.3d 334, 338 (Tex. 2006) ("[I]t is proper for a trial court to dismiss claims over which it does not have subject matter jurisdiction but retain claims in the same case over which it has jurisdiction."). The Library asserted no additional grounds for granting injunctive relief. *See* Tex. Civ. Prac. & Rem. Code Ann. § 65.011. Therefore, the district court properly dismissed this claim without affording the Library an opportunity to amend its pleadings. *See Koseoglu*, 233 S.W.3d at 840. We overrule the Library's fifth issue.

## IX. Conclusion

We affirm the district court's order.

NORA L. LONGORIA
Justice

Delivered and filed the
31st day of July, 2014.

36