Wheeler, J.
In the consideration of this case two^ questions are presented:
1st. Will the writ of mandamus lie to compel the Commissioner of the General Land Office to issue a patent in any case? If so,
2d. Is a case presented by this record proper for a final judgment awarding it?
The first question here presented can scarcely be considered as now an open question. The practice of resorting to this proceeding against this officer and to enforce the performance of this particular duty is believed to have had its origin almost as early as the creation of the office itself, and to have been continued, without a question as to its legality, down to the present time. (2 Tex. R., 581.) But the right to this writ in a case like the present rests upon other-authority than the practice of courts. By a statute of the Congress of the Republic, approved January 25, 1841, (5 Stat., 84, sec. 9,) it was enacted that “ all writs of mandamus sued out against the heads of any of the departments or bureaus of the Government shall be made returnable before the District Court at the seat of Government.”
It is well known that this statute was adopted in consequence of a practice then prevailing of calling upon the Commissioner of the General Land Office, by process from the courts of remote counties, to show cause against the issuance of this wnit in cases like the present in such distant counties. This act certainly recognizes the right to obtain the writ at the seat of Government; and it must, moreover, be regarded as a legislative recognition of the legality of the practice then existing of employing this writ as a private remedy, for it. was its use in practice as such which the Legislature undertook to regulate. The use of the writ as a private remedy seems to be conformable to modern practice.
In delivering the opinion of the court, in Kendall v. Stokes et al., (3 How. R., 100.) Chief Justice Taney said: “ The remedy in that form (by mandamus)' originally was not regarded as an action by the party, but as a prerogative writ, commanding the execution of an act where otherwise justice would be obstructed, and issuing only in cases relating to the public and Government and it was never issued where the party had any other remedy. It is now regarded as an action by the party on whose relation it is granted, but subject still to this restriction: that it cannot be granted to a party where the law affords him any other adequate means of redress.”
It has been settled, however, by a series of decisions in the Supreme Court of the United States, that a mandamus will issue to an officer of the Government only when the duty to be performed is ministerial in its character; but that where there is imposed upon the officer by law a duty requiring the exercise of judgment or discretion, a mandamus will not lie to control the exercise-of that discretion. (12 Pet. R., 524, 609; 14 Id., 497; 7 Cr. R., 504; 6 Wheat. R., 598; 6 How. R., 92, 100, 101, 102; and see Board of Land Commissioners v. Bell, Dallam, 366.)
*240 Respecting the general rule there does not appear to have been any question, but the difficulty has been in making its application to particular cases, and in determining- in such cases what acts are to be considered as merely ministerial •and what not.
The distinction between ministerial and judicial and other official acts seems to be that where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment in determining whether the duty exists, it, is not to be deemed merely ministerial. (14 Pet. R., 497, 514, 515; 12 Pet. R., 624; 6 How. U. S. R., 100; McElrath v. McIntosh et al., Monthly Law Rep., N. S., vol. 1, No. 9, p. 399, and cases cited.)
There are various duties assigned bylaw to the Commissioner of the General Land Office to be performed before the patent can issue. I-Ie must pass upon the validity of the certificate and the survey; he must determine whether both are of such a character as, under the law, to entitle the party to a patent; lie must also determine whether.the land sought to be convoyed was vacant when located or was appropriated by any previous claim, which he is required by law to respect. When these and such other questions as may address themselves to the commissioner, under the laws prescribing his official duties, shall have been resolved in favor of the applicant, his right to iris patent is clear and indisputable. The issuing of the patent then becomes a mere ministerial act involving no exercise of judgment, and one which the commissioner has no discretion to refuse. To withhold it would be the violation of a vested legal right. (1 Cond. R. S. C., 275.) And to deny the writ in such a case would be to deny a remedy where the right is clear and its violation palpable. Such a resolution would ill comport with the administration of justice in a government of laws. (Id., 275, 276.) In the case of Marbury v. Madison Chief Justice Marshall said: “ Tile question whether a right has vested or not is in its nature judicial and must be tried by the judical authority.” The determination of that question manifestly is an exercise of judicial authority which must intervene in every case where the court is called upon to determine upon the rights of a party, and no less in the ease of an application for a mandamus than in any other case. The court must judicially determine the rights of the party. But if the right be clear and has been denied, the authority of the court to apply the remedy is, we think, very clearly maintainable. Without considering in their order the several objections which have been urged to the awarding of the writ in this instance, we conclude that a mandamus may issue to compel the Commissioner of the Land Office to issue a patent when it shall have been made to appear to the court that the right of the party is clear and that it has been refused by the commissioner.
But the right must be clear. For “if the right or the obligation be doubtful the court will refuse the writ. (1 Chit. Gen. Frac., 791.) Does the record in the present case disclose a right which is clear?
We think it manifestly does not. In the first place, the rights claimed by the petitioner are stated very defectively in the petition. It is stated that the petitioner holds the claims upon which he demands that patents shall issue for himself and others, without alleging what claims are held in his own right and what as agent for others, without exhibiting his authority to demand and receive patents for those others, or stating who those others are, and without giving any accurate or sensible description of any one of the claims, so that •the court may determine whether they be legal and genuine claims upon which patents may lawfully issue. A greater degree of certainty than may be conveniently attainable ought not to be required, and a minute description of eacli •claim would perhaps be tedious and unnecessary in a case like the present. But the party ought certainly to state enough to enable the court to determine whether he has any rights and what those rights are. And even this 'has not been done in the present case.
*241 But if the averments of the petition are sufficiently certain to let in proof of 'the particular facts on which the right of the party depends, still the difficulty is not removed; for no proof whatever of those facts appears to have been adduced. It is impossible to determine from the record before us upon what claims and surveys, if any, the plaintiff is entitled to patents. And if the .judgment of the District Court were to be affirmed, it would be extremely difficult, if not quite impossible, to ascertain without going out of the record, for it certainly does nowhere appear by the record what particular rights would -thereby be adjudged to the petitioner.
If the omission of the commissioner expressly to deny the existence of the claims and surveys alleged to be in his office may be regarded as an admission •of not only their existence, but of their legality in all respects and the right of the party claiming to obtain patents upon them — and this is by no means clear— still the objection that the locations of the petitioner conflict with the titles of third parties not before the court remains unanswered.
The answer of the commissioner is not perhaps as explicit or satisfactory upon the whole case as it might have been made, or as the petitioner might have required had he called upon him to answer more fully ; yet it is sufficient to show that there may have existed, and probably did exist, good cause for refusing to issue the patents. It shows at least that the right of the petitioner to have patents issued upon his locations and surveys was doubtful, and that, as we have seen, was sufficient to require the refusal of the writ of mandamus.
In the case of Smith v. Power, (2 Tex. R., 72,) adverting to circumstances like those disclosed by the answer of the commissioner in this case, this court said: “ In cases similar to the other, however, where it is shown that the delineation of the field-notes was prevented by uncontrollable events, some reasonable period for that purpose dedueible from all the circumstances of the •case should be allowed. The general legislation on the subject is of so indefinite a character that it is impossible to establish any fixed rule applicable to all cases. The discretion to be exercised by the commissioner or permitted by the courts in delaying a patent must, however, be a reasonable one, and more especially as the valid rights of the older claimants are not concluded or impaired by the issue of the second grant or title unless those rights had upon proper issues made between the parties been adjudicated previous to the issue of the •second title.”
It was, then, incumbent on the party in this case to have shown that a reasonable time for delineating upon the map of the county the surveys of the titles referred to by the commissioner in his answer had elapsed, and that those •surveys had not been so delineated.
What that reasonable time should be in respect to persons claiming titles to lands situated in the counties of Refugio and San Patricio appears to have been determined by the Legislature by an act approved on the 1st of February, 1845. (9 Stat., 77.) By this act it was provided that persons owning lands in the counties of Refugio and San Patricio by titles from the Mexican Government or the Government of Coahuila and Texas, the lines of which had not been correctly and permanently marked and designated, should, within two years from the passsage of the act, cause the same to lie resurveyed and return certified •plats of the surveys to the General Land Office.
After the lapse of the period of two years prescribed by this act, if those persons for whose benefit the provision was made liad omitted to avail themselves of the privileges afforded by it, there can be no doubt that their claims, whatever they may have been, no longer interposed any obstacle to the issuing of patents to lands in those counties. The commissioner was no longer required by law to respect them, although the patents issued by him may not have affected any prior rights to the lands which it might be in the power of the parties ultimately to establish. It unquestionably became the duty of the *242 commissioner to issue patents upon all genuine and legal certificates and surveys within the designated counties, irrespective of any and all claims the surveys of which had not been returned to the land office or designated on the county map within the prescribed period, unless some other legal obstacle had intervened.
But until the period prescribed by the statute had elapsed the commissioner could not have been required nor was he authorized to issue patents, to the lands indicated as embraced by titles previously extended. For, as was said by this court in the case last cited, “ the statute referred to gave the plaintiff with others further time for the resurvey of his lands; and its legitimate effect was virtually to suspend the issue of patents during its existence in all that portion of the country in which lands were claimed under titles issuing from the former Governments of the country.” (Id., 75.) And after the lapse of the prescribed period, if in the mean time the surveys of prior valid titles had been properly delineated on the county map, that of course would interpose an inseparable barrier to the issuing of patents to lands included within such surveys.
Respecting these most material facts the record is silent. No evidence whatever appears to have been adduced at the trial respecting these surveys or the prior titles or claims to the lands in question. The county map was-not exhibited, nor was there any evidence offered in the court below to show whether the returns contemplated by the- act had been made or the surveys designated as required. In the absence of proof to the contrary, we must presume that the officer has done his duty; and the presumption therefore is either that the surveys in question have been delineated upon the map, as required by law, or else that there has intervened some other legal impediment to the issuing of the patents claimed by the petitioner. If the fact was-otherwise, it was certainly competent, and it was as certainly incumbent on him to have shown it at the trial.. Nothing can be more perfectly clear than that to entitle a plaintiff to have judgment, he must make out his case, not by averment merely, but also by proof.
Our conclusion therefore is that the answer of the commissioner contained a sufficient reason for his refusal to issue patents at that time to the lands claimed, and that he could not legally have been required to issue patents to-those lands until after the expiration of the two years prescribed by the act of the 1st of February, 1845, and that to have obviated the effect of the answer it must have been made to appear at the trial, first, that the requisite time and opportunity had been afforded to those claiming adversely to the petitioner to-have their surveys delineated on the county maps; and, secondly, that they had failed to cause them to be so delineated. The statute itself, of which the court would judicially take notice, afforded evidence of the first proposition; but in support of second no proof whatever appears to have been adduced by the petitioner, and he has thus failed lo establish a fact essential to the maintenance of his case. The mandamus, therefore, was improvidently and erroneously awarded.
Again, the petitioner admits his knowledge of the fact that “some of the-lands now claimed by him are claimed by others; but he charges that said-claims have no foundation in law or right; that the commissioner who por-ports to have issued them had no authority from the then existing Government for making such titles, and that they have neither identity as to their beginning or ending corners or marked lines, and, as claimed, embrace within their bounds ten times as much land as is called for in the grant.”
These averments show a controversy as to matters of fact of. a character which it is conceived could not properly be made the subject of adjudication in this proceeding, but which must first be determined in an action of “trespass to try title” instituted in the proper county.
Note 84. — Arberry v. Beavers, 6 T., 457; Horton v. Pace, 9 T., 81; Puckett v. White, 22 T., 559; Houston Tap and Brazoria R. R. Co. v. Randolph, 24 T., 317; Durrett v. Crosby, 28 T., 687; Railroad Co. v. Commissioner, 36 T., 382; Bledsoe v. Int. R. R. Co., 40 T., 537; Kuechler v. Wright, 40 T., 600.
Note 85. — Watkins v. Kirchain, 10 T., 375; Tabor v. Commissioner, 29 T., 508.
Note 86. — Magee v. Chadoin, 30 T., 660.
The practice is understood formerly to have been to proceed in the county in which the land was situated against the adverse party to try the right, and the officer to compel the performance of the duty. But since the act of the 25th of January, 1841, (5 Stat., sec. 9,) proceedings by mandamus against the heads of any of the departments of the Government must be instituted at the seat of Government.. It does not, however, appear to have been intended by the act last cited to enable a party, under the form of a proceeding by mandamus against the Commissioner of the Land Office, to bring any other person to whose lands he may choose to assert a claim from his home or the county in which his lands may be situated to the seat of Government to defend his title. Such a practice would be regarded as intolerable, and could never have been contemplated by the Legislature. Where the object of the suit is to try the title to land, the law still requires that it shall be instituted in the county in which the land is situated. (Acts of 1846, pp. 363, 364, sec. 1.) It is only in those cases where the right or title is not litigated that the party may proceed by mandamus against the commissioner at the seat of Government. But where there are questions of fact to be litigated between the holders of adverse claims before the right of the party to his patent can be determined, he may and ought to sue upon his certificate and survey in the county in which the land is situated, and there settle the question of right. That determined in his favor by tlie judgment of a court of competent jurisdiction will no doubt invariably supersede the necessity of resorting to any coercive measures against the Commissioner of the Land Office to compel the issuance of his patent or the performance of any other duty imposed by law upon that officer.
This view would perhaps lead to the conclusion that the petition iu the present ease ought to be dismissed. But as it may be that the party can so amend or supply the omission in his proofs as to present a case proper for the awarding of a mandamus, the cause will be remanded to afford him that opportunity.
The mandate of this court in the case of Smith v. Power appears to have been relied on by the petitioner at the trial in the court below. The mandate was properly introduced for the purpose of showing that the injunction by which the proceedings in the case had been suspended" was dissolved. But it was admissable in evidence for no other purpose. The dissolution of the injunction left the parties precisely as they were before it was issued. The petitioner was at liberty to prosecute his suit, and the commissioner to supersede the necessity of further litigation by issuing patents if in his j udgment the party was legally entitled to them. The effect of the judgment in that case was simply to dissolve the injunction; it could have no other effect. That was the issue presented by the record, and of course none other was decided.
We are of opinion that the judgment be reversed and the cause remanded for further proceedings.
Judgment reversed.