**AFFIRMED in part and REVERSED and REMANDED in part; and Opinion Filed April 25, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00934-CV**

**KALEI MERRILL, Appellant**
**V.**
**MITCHELL CURRY, MELINDA DEFELICE AND TAMIRA GRIFFIN, EACH INDIVIDUALLY AS DEFENDANTS, Appellees**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-01827-2019**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Smith

Appellant Kalei Merrill appeals the trial court's summary judgment in favor of appellees Mitchell Curry, Melinda DeFelice, and Tamira Griffin. Because we conclude that appellees were immune from suit but that the trial court failed to include a mandatory award of attorney's fees to appellant under rule 91a of the Texas Rules of Civil Procedure, we affirm the trial court's summary judgment and reverse and remand the issue of attorney's fees for further proceedings consistent with this opinion.

## Factual and Procedural Background

Merrill was a teacher employed by the McKinney Independent School District (MISD) for almost ten years. On October 16, 2017, her principal confronted her with nude pictures of herself that had been posted on a website. She resigned in lieu of an investigation but was subsequently reinstated after filing a grievance with MISD's Human Resources Department. In 2019, she filed suit against appellees alleging they forced her to resign under duress and false pretenses. Specifically, she alleged causes of action for (1) violation of section 98B.002 of the Texas Civil Practice and Remedies Code by unlawfully disclosing or promoting intimate visual material; (2) negligence per se by violating section 21.16 of the Texas Penal Code, which makes it a criminal offense to unlawfully disclose or promote intimate visual material; (3) intentional infliction of emotional distress; (4) intrusion upon seclusion; (5) defamation; and (6) public disclosure of private facts. Appellees filed a general denial and pleaded several affirmative defenses. Appellees also filed a motion to dismiss under TEX. R. CIV. P. 91a, which the trial court denied, and a motion to dismiss under the Texas Citizens Participation Act (TCPA),[1] which the trial court granted. The trial court entered a final judgment dismissing Merrill's claims.

On appeal, this Court reversed and remanded the trial court's judgment dismissing the case pursuant to the TCPA. *Merrill v. Curry*, No. 05-19-01229-CV,

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003.

–2–

2020 WL 6498983, at *1 (Tex. App.—Dallas Nov. 5, 2020, no pet.) (mem. op.).

Also, in that opinion, we concluded that the rule 91a order was interlocutory and

declined to address the parties' related issues on appeal. *Id.* at *1, 7–8. We set out

the relevant underlying facts of this case as follows:

> Mitchell Curry is the principal at Scott Johnson Middle School in McKinney. At 10:53 p.m. on October 15, 2017, an anonymous email was sent to him and two of his assistant principals, Grace Harris and David Warren. The email stated:
>
> > I am an anonymous MISD parent and I recently came across some text messages on my son's phone. The text messages were from other kids [sic] were talking about a teacher at Scott Johnson Middle School, who had posted some nude pictures of herself. I found out the name of the teacher and went online to FLICKR and checked it out for myself to see if this was true and much to my surprise it is.
> >
> > I can't believe it! All I can say is WOW! I thought maybe you should tell her that she needs to take those pictures off the internet. I am not sure how many of the kids have already seen these pics. I do not want to get involved in this, because it is such an awkward situation. Please tell this teacher to get those pictures off the internet. The teacher's name is Kalei Merrill.
>
> The email provided a link to the website where the photos were posted and could be viewed. Although the email showed it was sent by "Anonymous Mom," it is undisputed the email was sent by Merrill's ex-fiancé.
>
> Because Curry's email address contained a typographical error, he did not see the email until the following morning when Warren forwarded it to him. Curry accessed the website and saw "nude (and some pornographic) photos" of Merrill. He believed the postings and sharing of the photographs violated MISD policy, the Educators Code of Ethics, and the MISD Student Code of Conduct, requiring investigation. Because of the content of the email, Curry forwarded the email to his

district supervisor, Dr. Melinda DeFelice, assistant superintendent of secondary student support, who then contacted Tamira Griffin, assistant superintendent of human resources. Curry said they were concerned the email and website link implicated "potential adverse effects on the mental, safety, and well-being of MISD students" at his school and that Merrill had "likely lost the ability to be an effective teacher in the MISD." DeFelice and Griffin instructed Curry to bring Merrill to his office with her pictures on the screen "for a 'shock factor.'" DeFelice advised him to have a female administrator at the meeting.

The very same morning that he received the email, Curry pulled Merrill from her classroom. As the two walked back to his office, Merrill, who had worked in the McKinney school district for several years with only positive performance reviews, asked the reason for the meeting. Curry would not say. When they arrived at Curry's office, Harris was already there. Curry displayed the nude images from the website on an oversized computer monitor and asked if the pictures were of her. Merrill confirmed that they were but said she had not created the website, posted the photographs, or authorized or consented to the publishing of such photographs. Rather, she explained that she had previously taken the pictures and sent them to a former fiancé with whom she had been in a long-distance relationship.

Curry proceeded to scroll through the photographs and told Merrill she had "two options: resign or go on administrative leave and incur an investigation that would involve the human resources department and school board to see the pictures." Merrill was in a "shocked state" and "under duress." According to her petition, Merrill repeatedly stated that she did not know what to do and asked for time to call her parents and her lawyer, but Curry refused. Merrill alleged that Curry repeatedly demanded and emphasized that it was "urgent" that she make a decision. She asked for twenty-four hours to consider the events and the options available to her, but Curry refused and demanded a decision "now." Merrill alleged that Curry told her that the photos "were being viewed by school parents already, and that they were being circulated thru [sic] student devices at school too." He told Merrill that if she proceeded with an investigation, "everyone" would know and they "would 'all' see the website." Merrill ultimately decided to resign, but told Curry and Harris that she did not want to and did not understand why she had to lose her job; both Curry and Harris told her she had "no other choice." Curry gave her a pad of paper and told her what to write.

–4–

He then escorted her from the building. Merrill alleged that a subsequent investigation by MISD proved that the information used by Curry to pressure and intimidate her, including that the photographs had been viewed by parents and students, was false.

During the meeting, which lasted about thirty minutes, Curry left the images displayed on his monitor rather than closing out the website. When he left the office to walk Merrill to her car, the images remained on his monitor, which faced the open, unlocked door "so that any one passing by" could view them. And, Merrill alleged, the images were viewed by other parties.

*Id.* at *1–2, 1 n.1 (alterations in original) (footnotes omitted) (taking facts from pleadings and evidence filed in relation to motion to dismiss).

Following this Court's remand, appellees moved for the trial court to reconsider its orders on appellees' motion to dismiss under rule 91a. The trial court denied this motion. Although Merrill was the prevailing party on appellees' rule 91a motion, the trial court's order denying appellees' motion to reconsider did not award any attorney's fees to Merrill.

Additionally, following this Court's remand, appellees also moved for summary judgment on multiple grounds. First, appellees argued that they were entitled to summary judgment because they could disprove at least one element of each of Merrill's six causes of action as a matter of law. As to Merrill's cause of action for violation of section 98B.002 of the Texas Civil Practice and Remedies Code, appellees asserted that, at the time of their limited disclosure of the already public photos, none of the appellees had reason to know Merrill had not consented to the posting of the photos on the public website and none of the appellees promoted

the photos. Appellees argued that Merrill's negligence per se claim, based on section 21.16(c) of the Texas Penal Code, failed because none of the appellees threatened to disclose the photos without Merrill's consent in order to obtain a benefit. Because Merrill had alleged other claims that would provide a remedy for Merrill's emotional distress, appellees argued that she could not recover on her "gap filler" claim for intentional infliction of emotional distress. As to Merrill's claim for intrusion upon seclusion, appellees contended that they did not physically invade Merrill's privacy or eavesdrop on her conversations and that the photos were no longer of Merrill's private affairs because they were already on a public website when appellees viewed them. They asserted that the fact that the pictures were already on the internet when they viewed them also defeated Merrill's claim for public disclosure of private fact. And, finally, appellees argued that Merrill's defamation claim failed because they did not publish any false statements that defamed her to a third party.

In the second part of their motion for summary judgment, appellees argued that they could prove the following affirmative defenses as a matter of law: governmental, official, and professional immunity as to all claims; Merrill's defamation claim was barred by the one-year statute of limitations; in defense of defamation, the graphic photos of Merrill were true in that she took them of herself and sent them to her fiancé; and any disclosure of the photos was necessary to investigate the claim in the email that Merrill had posted the photos online and that

students were viewing and sharing the photos and, thus, the defense of excuse defeated Merrill's claims for violation of section 98B.002 and for negligence per se.

In response to appellees' motion for summary judgment, Merrill argued that appellees were not acting within the scope of their employment, that they violated laws and policies by distributing the photos amongst themselves and by allowing others to view them on Curry's computer, and appellees not only lied in their affidavits but also copied and pasted each other's accounts of what happened. Merrill also asserted that she had no time to properly and sufficiently ascertain the true scope of appellees' employment and whether they were acting outside their legal authority because she had been "hampered by the limitations" placed on discovery by the trial court and the appellees were refusing to submit to depositions.

After granting Merrill's first motion for continuance of the summary judgment hearing, the trial court denied Merrill's second motion for continuance and granted summary judgment in favor of appellees. The trial court did not specify on which ground it granted appellees' motion. The trial court further ordered that Merrill take nothing on her causes of action and dismissed such causes with prejudice.

On appeal, Merrill presents the following six issues: (1) whether the trial court erred in concluding that appellees were immune from their conduct; (2) whether the trial court erred in concluding that appellees established their affirmative defenses as a matter of law; (3) whether the trial court erred in concluding that appellees

disproved as a matter of law any elements of Merrill's six causes of action; (4) whether the trial court erred by failing to grant a continuance for Merrill to obtain further discovery from appellees; (5) whether the trial court erred by failing to award mandatory fees to Merrill for surviving two 91a motions to dismiss in its final judgment; and (6) whether the trial court's "continual punishment of a victim is inherently against Texas values and any reliance on immunity is anachronistic to the American way of life."

### Summary Judgment Standard of Review

We review a summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019). A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84. We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019).

A defendant is entitled to summary judgment on a plaintiff's cause of action if the defendant conclusively negates at least one essential element of the plaintiff's cause of action or conclusively establishes all the elements of an affirmative defense as a matter of law. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015).

We must affirm the summary judgment if any ground asserted in the motion, and preserved for appellate review, is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

**Affirmative Defense of Immunity**

In her first issue, Merrill argues that the trial court could not have concluded that appellees were immune from their conduct under any theory of immunity. First, Merrill contends that courts have erroneously concluded that there is no good faith requirement to an educator's immunity under the education code. Even removing this requirement, Merrill argues that appellees failed to establish that their actions were within their official capacity or discretionary, thus defeating official immunity, governmental immunity, or professional immunity. Because appellee's affirmative defense of professional immunity is dispositive, we address it first.

The Texas Education Code provides that "[a] professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee." TEX. EDUC. CODE ANN. § 22.0511. A "professional employee of a school district" includes "a superintendent, principal," and "any other person employed by a school district whose employment requires certification and the exercise of discretion." *Id.* § 22.051(a)(1), (6).

Merrill has not challenged whether appellees were professional employees of the school district as defined by the education code, and Curry, as principal, and Griffin and DeFelice, as superintendents, clearly fall within the definition. *See id.* Although Merrill argues that courts have erroneously concluded that there is no good faith element under the education code as is generally required for official immunity, the plain language of the statute does not require the act to have been performed in good faith. *See, e.g.*, *Compton v. Port Arthur Indep. Sch. Dist.*, No. 09-15-00321-CV, 2017 WL 3081092, at *8 (Tex. App.—Beaumont July 20, 2017, no pet.) (mem. op.); *Robinson v. Brannon*, 313 S.W.3d 860, 866 n.3 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Kobza v. Kutac*, 109 S.W.3d 89, 93 & n.2 (Tex. App.—Austin 2003, pet. denied). The education code makes clear that the two are different: "The statutory immunity provided by this subchapter is in addition to and does not preempt the common law doctrine of official and governmental immunity." TEX. EDUC. CODE § 22.051(b). Therefore, we turn to the two remaining elements of immunity under the education code. Merrill argues that appellees failed to prove that (1) their actions fell within the scope of their employment, or within their official capacity or authority, and (2) their actions were discretionary. We disagree.

The scope-of-employment analysis "calls for an objective assessment of whether the employee was doing her job when she committed an alleged tort, not her state of mind when she was doing it." *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017). "The scope-of-employment analysis, therefore, remains

–10–

fundamentally objective: Is there a connection between the employee's job duties and the alleged tortious conduct? The answer may be yes even if the employee performs negligently or is motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to her job responsibilities." *Id.*

The summary judgment evidence consisted of affidavit testimony by each appellee, exhibits attached to the affidavits, and the deposition testimony of Griffin and Curry. Griffin testified that her duties as Assistant Superintendent of Human Resources/Chief Human Resources Officer included directing and managing district personnel functions to ensure legally sound and effective personnel management practices, processing employee-related complaints, and assisting supervisory personnel such as principals in conducting due process procedures. DeFelice testified that her duties as Assistant Superintendent of Secondary Support included supporting MISD secondary schools in all areas to enable the schools to carry out their mission of educating the students of MISD; managing and hearing district level grievances associated with education issues; complying with and implementing policies established by state and federal law, State Board of Education rules, and local board policies, regulations, and guidelines; and performing all other duties as assigned. Curry testified that his duties as Principal of Scott Johnson Middle School included supervising and evaluating the performance of staff assigned to his campus. He reported to DeFelice and was subject to Griffin's direction regarding employee

issues. The summary judgment evidence also included a job profile of each appellee's position with the district, which included the duties listed above.

When Curry received the email, he called DeFelice for direction and forwarded the email to her in her role as his direct supervisor and Assistant Superintendent for secondary schools. Because the email concerned potential teacher misconduct, she immediately forwarded the email to Griffin in her role as Assistant Superintendent of Human Resources. Appellees testified that the email was concerning because the posting of nude photos by a teacher and subsequent sharing of those photos by students would violate district policy, such as the Educator's Code of Ethics and the Student Code of Conduct, and might need to be reported to CPS.[2] And, in fact, Curry did report the situation to CPS.[3] Griffin further testified, "Because the email and FLICKR.com link implicated potential teacher misconduct, it was within my job responsibilities to investigate this matter in order to take potential disciplinary action, up to and including termination." Appellees also testified that, because the email implicated potential adverse effects on the mental health, safety, and well-being of MISD students, it was within each of their job responsibilities as principal or superintendent to investigate so that, if necessary,

---

[2] CPS, or Child Protective Services, is a division of the Texas Department of Family and Protective Services.

[3] By separate order we deny Merrill's request for this Court to take judicial notice of Merrill's CPS records request and CPS's response.

they could protect minor students and take appropriate remedial or disciplinary action.

Appellees decided Curry would first meet with Merrill as her principal because Human Resources Director Dr. Chad Teague, who would normally meet first with an employee, was not available. Griffin suggested that Curry have a female administrator with him and show Merrill the photos. Neither Griffin, nor DeFelice, advised Curry to leave the pictures open on his computer where others could potentially walk by and see the photos while he was not in his office. Griffin explained, "I gave [Curry] instructions in general that he needed to look into it, ask any questions that he had, talk certainly to Ms. Merrill, get her side of whatever the story was, and visit with her about that."

Curry testified that he met with Merrill and, after Merrill admitted the photos were of her, he provided her with "two options as directed by his superiors: promptly resign or go on paid administrative leave pending a more formal human resources investigation, which would likely include additional persons within the school district viewing the photos." As to leaving the photos on his computer screen while he escorted Merrill out of the building, Curry testified that he did not remember doing so, that he did not do so intentionally, and that his screen had gone to "sleep" during the five minutes that he was gone.

Merrill argues that it was not within appellees' scope of employment to investigate whether she posted nude pictures on the internet; it was Teague's

responsibility to investigate. We disagree. Although Teague was the district employee generally assigned to investigate such an issue with personnel, Teague was unavailable to do so that day. Teague, as Director of Human Resources, reported to Griffin; Griffin reported directly to the Superintendent of MISD. Thus, as Superintendent of Human Resources, it was within Griffin's scope of employment to direct Curry to talk with Merrill due to Teague's unavailability and the information at issue. It was also in DeFelice's scope of employment to report the email to Griffin and seek assistance from her in how to direct Curry to handle the situation. Griffin explained that, as principal, Curry would have authority to ask her to resign—to "have that conversation with her." Furthermore, Griffin expressly assigned him that task as his superior. Therefore, we conclude that appellees acted within the scope of their authority because they were each discharging duties generally assigned to them or specifically assigned to them that day. *See Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 424 (Tex. 2004).

We next turn to whether appellees acts were discretionary. There can be no dispute that Griffin's actions in directing Curry to talk with Merrill and confront her about the pictures involved personal deliberation, decision, and judgment. *See id.* at 425. The same is true for DeFelice when she received the email from Curry and forwarded it to Griffin for her assistance. Merrill argues that Curry was simply following orders and, therefore, his actions were not discretionary. We disagree that Curry's actions were of such a nature to be considered ministerial. Griffin gave him

–14–

general instructions in how to approach the situation with Merrill, but she did not give him specific orders that were "with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Id.* at 425 (quoting *Comm'r of the Gen. Land Off. v. Smith*, 5 Tex. 471, 479 (1849)). Curry still exercised discretion in how he discussed the situation with Merrill and in how he treated Merrill during the discussion. Griffin did not provide Curry with line-by-line directives in how to proceed. Curry also had a choice in whether to even talk to Merrill about the pictures. Appellees testified that they decided Curry would talk to her because he was there on campus with her, but there is no evidence in the summary judgment record to suggest that Curry had no choice but to comply with Griffin's instructions. *See id.* And, finally, as to Curry's decision to leave the pictures on the computer while he escorted Merrill out of the building, we conclude that such action involved his personal judgment; he was not ordered to show the pictures to anyone else or to leave them displayed for others to see. *See id.*

Merrill also contends that this Court has already decided, in the parties' first appeal, that Merrill's allegations do not concern a legitimate investigation. Merrill quotes the following language from our opinion: "[T]he actions that Merrill has alleged form the basis of her claims in this case concern how the email was used in a manner that does not implicate that legitimate interest." *Merrill*, 2020 WL 6498983, at *6. In making this statement, this Court was determining whether the TCPA applied to Merrill's suit, not whether appellees were acting within the scope

–15–

of their employment. *Id.* at \*4–7. Specifically, this Court was deciding whether Merrill's claims involved a matter of public concern so as to be based on, related to, or filed in response to appellees' exercise of the right of free speech. *Id.* at \*5–7. We explained:

> In her petition, Merrill alleged that appellees "planned the intentional display of the intimate and private photos" contained in the email in a way that they knew would humiliate and intimidate her into resigning by, for example, displaying the private images on an oversized computer monitor for "shock factor," refusing to allow her to seek out a third party for advice, and then leaving the images on the monitor for others to see. In other words, the gravamen of Merrill's lawsuit involves *how* appellees used the email to create a hostile and humiliating environment in the context of a private employment matter. The manner in which appellees conducted a private employment matter, even if the target is a public schoolteacher, is not a matter of public concern under the circumstances here. In so concluding, we acknowledge school districts have a legitimate interest in investigating information such as that contained in the email. But the actions that Merrill has alleged form the basis of her claims in this case concern how the email was used in a manner that does not implicate that legitimate interest.

*Id.* at \*6 (emphasis in original). It is undisputed that appellees did not formally investigate the claims in the email, such as whether any parents, students, or teachers had viewed or distributed the images of Merrill. However, as we previously explained, the basis of Merrill's claims involve how the appellees acted in a "private employment matter" at Merrill's place of employment. *Id.* We are not persuaded that this Court's prior opinion changes our conclusion today that appellees' actions were discretionary and were within their scope of employment and authority.

Exercising poor judgment does not remove an act from within the scope of the district employee's duties. *Kobza*, 109 S.W.3d at 94.

We conclude that the trial court did not err in granting summary judgment on appellees' affirmative defense of immunity as provided under the education code. Therefore, we overrule Merrill's first issue.

In her sixth issue, Merrill contends that "reliance on immunity is anachronistic to the American way of life" and that neither the United States nor the Texas Constitution grants immunity to government officials. As an intermediate appellate court, we must follow the law as set by the legislature and interpreted by the Supreme Court of Texas. *See Dall. Area Rapid Transit v. Amalgamated Transit Union Loc. No. 1338*, 273 S.W.3d 659, 666 (Tex. 2008) ("It is fundamental to the very structure of our appellate system that this Court's decisions be binding on the lower courts."); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976) ("We adhere to our decisions in the past that the waiver of governmental immunity is a matter addressed to the Legislature."). As illustrated by our discussion above, we have applied the laws enacted by the legislature and as explained by the supreme court. Merrill's sixth issue is overruled.

Because we have concluded that the trial court did not err in granting summary judgment against Merrill on each of her six causes of action based on appellees' immunity, it is not necessary for us to reach Merrill's second and third issues in

–17–

which she argues that the trial court erred in granting summary judgment for other reasons.  *See* TEX. R. APP. P. 47.1.

## Motion for Continuance

In Merrill's fourth issue, she argues that the trial court erred by failing to grant a second continuance of the summary judgment hearing so that she could obtain further discovery from appellees.  We review a trial court's decision on whether to grant a continuance of the summary judgment hearing for an abuse of discretion. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996).  A trial court abuses its discretion when it acts arbitrarily or without regard to any guiding rules or principles.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

"When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *Tenneco*, 925 S.W.2d at 647.  Rule 166a(g) provides:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

TEX. R. CIV. P. 166a(g).  We consider the following nonexclusive factors when determining whether a trial court abused its discretion in denying a motion for

–18–

continuance that seeks additional time to conduct discovery: the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Joe*, 145 S.W.3d at 161.

Here, the trial court granted Merrill's first motion for continuance so that Merrill could take appellees' depositions. The summary judgment hearing was continued from April 16, 2021, until June 14, 2021. Merrill took appellees' depositions during that timeframe; however, Merrill's counsel abruptly suspended Griffin and Curry's depositions after appellees' counsel made objections. In her second motion for continuance, Merrill argued that she needed to again take their depositions because appellees' "answers, during the deposition, have made it clear that they did not take the time to answer [Merrill's] requests honestly or completely." She further claimed that appellees' testimony was conflicting and perjurious and accused counsel of prompting witnesses "to forget" or "to develop amnesia" "by making invalid objections to form." Merrill also alleged that appellees did not fully or truthfully answer her requests for production, requests for admission, or interrogatories. Merrill filed her summary judgment response the same day she filed her second motion for continuance.

Appellees maintain that they properly answered discovery and that there was no legitimate reason for Merrill's counsel to abruptly suspend the depositions. "Merrill's counsel's unwarranted, unilateral suspension of Griffin's and Curry's

–19–

depositions is not proper grounds for a continuance to take more discovery." Further, although Merrill argued that appellees failed to produce responsive documents, Curry and Griffin no longer worked with MISD at the time of the request and did not have access or possession to MISD documents, such as emails they sent through their MISD email account. Appellees maintain that they turned over what they personally possessed or controlled and argue that Merrill's counsel's "mere surmise" that appellees failed to produce responsive documents is insufficient to support a motion to compel.

Based on the record before us and the ground on which we have affirmed the trial court's summary judgment, we cannot conclude that the trial court abused its discretion in denying Merrill's second motion for continuance. The record shows that the case was filed in April 2019 and, after remand, had been pending before the trial court for six months when the trial court denied Merrill's motion. The record also shows that appellees responded to discovery in 2019 and 2021. Merrill has not shown that appellees failed to properly answer her discovery requests. At the 2021 depositions, which the trial court ordered when it granted Merrill's first motion for continuance, Curry and Griffin remained available to answer questions and were ready and willing to continue their depositions; however, Merrill's counsel abruptly suspended them. Thus, Merrill had the opportunity to depose appellees but failed to exercise diligence in doing so.

Moreover, we conclude that Merrill has failed to establish what essential facts she believes she would discover if allowed to re-depose appellees. Merrill maintains that appellees did not truthfully answer questions and disagrees with appellees' contentions that they were acting within the scope of their employment. But Merrill has failed to demonstrate how further discovery would establish a fact question on that issue. Therefore, Merrill's fourth issue is overruled.

## Mandatory Attorney's Fees under Rule 91a

Merrill argues in her fifth issue that the trial court failed to award her mandatory fees for surviving appellees' two motions to dismiss under Rule 91a and failed to incorporate any award into the final judgment. Rule 91a provides that "a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1. The rule also provides that the prevailing party is entitled to attorney's fees:

> Except in an action by or against a governmental entity or a public official acting in his or her official capacity or under color of law, the court must award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court.

FORMER TEX. R. CIV. P. 91a.7.[4]

---

[4] *See* Final Approval of Rules for Dismissals and Expedited Actions, Misc. Docket No. 13-9022 (Tex. Feb. 12, 2013, order). Rule 91a.7 has been amended since this action was commenced to state that a trial court "may," rather than "must," award costs and attorney's fees to the prevailing party. *See* Order Amending Texas Rule of Civil Procedure 91a.7, Misc. Docket No. 19-9052 (July 11, 2019). The 2019 comment to Rule 91a.7 provides: "The amendments to Rule 91a.7 apply only to civil actions commenced on or after September 1, 2019. A civil action commenced before September 1, 2019 is governed by the rule as adopted in Misc. Docket No. 13-9022." TEX. R. CIV. P. 91a cmt. 2019. Merrill filed suit against appellees on April 3, 2019; therefore, the former rule controls.

In the trial court's August 21, 2019 order denying appellees' first motion to dismiss under Rule 91a, the court awarded Merrill her costs and attorney's fees but ordered counsel to submit all costs and reasonable and necessary attorney's fees by affidavit. Merrill's counsel filed his unsworn declaration after the trial court entered final judgment based on its granting of appellees' TCPA motion to dismiss. Before the trial court lost its plenary power, it signed an order awarding $24,878.39 in costs and attorney's fees to Merrill, as well as $30,000 in attorney's fees "based on successful appeal by the Plaintiff to any court of appeals" and $75,000 for a successful appeal to the supreme court. However, that award was not included in the trial court's 2019 final judgment.

After concluding that the TCPA did not apply, this Court declined to address the rule 91a motion in the parties' first appeal because we concluded the order denying the motion was interlocutory. *Merrill*, 2020 WL 6498983, at *7–8. We noted, "Nothing in this opinion should be interpreted to preclude the trial court from considering or reconsidering any interlocutory ruling, including those related to the rule 91a motion." *Id.* at *8 n.7. On remand, appellees filed a motion to reconsider the orders on appellees' motion to dismiss under rule 91a. In their motion to reconsider, appellees asserted that, even if the trial court denied its motion to reconsider and Merrill was entitled to attorney's fees, her counsel's unsworn declaration did not support the fees requested because it did not provide evidence regarding the time expended on each particular task. Merrill filed a new declaration,

which included billing statements in response. In her final request, Merrill asked for a total of $40,628.69 for prevailing in the two 91a motions and $52,687.50 to defend the first appeal.

On September 27, 2021, the trial court denied appellees' motion to reconsider its orders entered on appellees' motion to dismiss pursuant to rule 91a. The trial court also denied Merrill's request for attorney's fees by striking out the language in the proposed order that would have granted Merrill attorney's fees in the amounts she requested.

On appeal, appellees agree Merrill was awarded $24,878.39 in attorney's fees before the first appeal concerning the motion to dismiss under the TCPA. They contend that the award did not have to be included in the final judgment to be ordered. However, appellees argue that Merrill was not entitled to appellate attorney's fees because the first appeal did not address the rule 91a motion. Appellees further argue that the trial court's denial of the second requested award was not error because the court could have found the additional amount was not reasonable and necessary due to it being a motion for reconsideration and not a motion to dismiss the new, live pleading.

Based on the record before us, we cannot agree that it is clear that the trial court intended for the $24,878.39 to stand when it entered a subsequent order striking out the fees Merrill requested, which included that original amount. Furthermore, if the trial court's 2021 order is a denial of Merrill's appellate fees from

the parties' first appeal, we agree such denial is in error. As Merrill explains, this Court has previously held a dismissal by this Court for want of jurisdiction means that the party was "unsuccessful" and "fail[ed] to obtain relief" on appeal. *Law Offs. of Windle Turley, P.C. v. French*, 164 S.W.3d 487, 493 (Tex. App.—Dallas 2005, no pet.). Therefore, we sustain Merrill's fifth issue and remand the issue of mandatory attorney's fees under rule 91a to the trial court for resolution.

### Conclusion

Having sustained Merrill's fifth issue and having overruled her remaining issues, we affirm the trial court's summary judgment in favor of appellees and remand the issue of mandatory attorney's fees under rule 91a for further proceedings consistent with this opinion.

/Craig Smith/
CRAIG SMITH
JUSTICE

210934F.P05

–24–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KALEI MERRILL, Appellant

No. 05-21-00934-CV      V.

MITCHELL CURRY, MELINDA DEFELICE AND TAMIRA GRIFFIN, EACH INDIVIDUALLY AS DEFENDANTS, Appellees

On Appeal from the 380th Judicial District Court, Collin County, Texas Trial Court Cause No. 380-01827-2019.

Opinion delivered by Justice Smith. Justices Pedersen, III and Goldstein participating.

In accordance with this Court's opinion of this date, the summary judgment of the trial court is **AFFIRMED**. We **REVERSE** and **REMAND** the issue of mandatory attorney's fees under TEX. R. CIV. P. 91a to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 25th day of April 2023.